UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD E. COLSON,

                              Plaintiff,

            -against-

MAXSOLAINE MINGO, MUNISH
CHOPRA, ENJOLI MURRIA, MARK
DANIELS, WALTER ROSS, KEVIN
ANDERSON, CEDRIC CARTER, ALASON
HENRY, EDWIN LOPERA, DANIEL ORTIZ,
and THE CITY OF NEW YORK,

                              Defendants.

18-CV-2765 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

On August 30, 2016, incarcerated Plaintiff Ronald Colson was detained overnight on a

transport bus on Rikers Island. Colson and other incarcerated individuals were being transferred

from the Manhattan Detention Complex to Rikers Island. The Rikers Island facilities would not

admit the passengers, and the Manhattan Detention Complex refused to take them back. During

that night of detention, Colson and the other incarcerated individuals on the bus were denied

access to food, water, and a bathroom. They were forced to urinate and defecate at the back of

the bus, the odor of which caused them to vomit. The next day, officers from the Emergency

Services Unit arrived on the bus and sprayed the passengers with a chemical agent, allegedly

because the passengers would not disembark from the bus.

Plaintiff brings this action under Section 1983 for unconstitutional conditions of

confinement, excessive use of force, and municipal liability. The Court previously denied

Defendants' first motion for summary judgment and granted Plaintiff leave to amend his

complaint with the assistance of new counsel. Defendants now seek to dismiss claims against

two new defendants as time-barred and to renew their motion for summary judgment on the

remaining claims. Because the claims against the new defendants relate back to Plaintiff's prior pleadings, they are not time-barred. Plaintiff has also adduced sufficient evidence of personal involvement of each individual defendant sufficient to survive summary judgment. But he has not done so with respect to the City. As such, Defendants' motion to dismiss is DENIED and motion for summary judgment is GRANTED in part and DENIED in part. All documents filed under seal in connection with these motions shall be unsealed, except that portions pertaining to privileged law enforcement procedures shall be redacted.

## BACKGROUND

### A. Factual Background

On August 30, 2016, Plaintiff was detained at the Manhattan Detention Complex ("MDC") in the custody of the New York City Department of Correction ("DOC"). ECF No. 202 ("Statement of Material Facts" or "SMF") ¶ 1; ECF No. 131-5. On this day, Plaintiff was assigned for transfer from MDC to the Anna M. Kross Center ("AMKC"), a DOC facility located on Rikers Island. SMF ¶ 2. Plaintiff requested not to be transferred, based on his understanding of the dangerous conditions on Rikers Island. ECF No. 203-2 at 58:24–60:1. Later that day, Plaintiff was placed on a bus with other incarcerated individuals to be transferred to Rikers Island. SMF ¶ 12.

Plaintiff did not eat breakfast earlier that day and only ate cucumbers for lunch because he found the other food provided to be "not really edible." ECF No. 203-2 at 55:10–56:15; SMF ¶¶ 10–11. Plaintiff testified that the next scheduled meal time at MDC was at 6:30 p.m., but that he and the other individuals being transferred were not given any food after approximately 11:30 a.m. on August 30, 2016 prior to being transferred. ECF No. 203-2 at 55:7–9, 56:10–15.

At approximately 7:00 p.m. on that day, Plaintiff and several other incarcerated individuals boarded a DOC transport bus at MDC, which contained broken glass on the floor and

some seats. SMF ¶¶ 12, 15; ECF No. 203-2 at 86:23–24. Plaintiff states that DOC employees made efforts to locate another transport, but ultimately ordered Plaintiff and the other incarcerated individuals to board the bus notwithstanding their complaints about broken glass and the unsanitary condition of the bus, including leftover trash and food waste, which were not cleaned up. ECF No. 203-2 at 86:11–22; 87:17–23, 93:3–14; ECF No. 203-3 at 21:20–25.

Defendant Munish Chopra, a correction officer ("CO"), drove the bus to Rikers Island alongside another unknown escort officer. SMF ¶ 16. The transport bus arrived at AMKC on Rikers Island at approximately 7:45–7:50 p.m., but none of the passengers were permitted to enter AMKC at that time. *Id.* ¶¶ 18–19. Chopra and the unknown escort officer then drove the bus to the George R. Vierno Center ("GRVC") on Rikers Island to transfer the individuals assigned to that facility, but the GRVC staff did not accept anyone on the bus for transfer. *Id.* ¶ 20. Plaintiff testified that the bus visited various facilities on Rikers Island attempting to admit the passengers into one of the buildings, to no avail. ECF No. 207-2 at 18:22–25, 27:11–25.

The MDC tour commander on duty that night was Assistant Deputy Warden ("ADW") Enjoli Lake, formerly known as Enjoli Murria. ECF No. 91 at 2; ECF No. 207-4. Defendant Chopra testified that during transfers, it was his practice to keep the tour commander abreast of the situation. ECF No. 207-3 at 23:4–20. On the night of August 30, 2016, Chopra called Defendant Lake to discuss whether they could bring the incarcerated passengers back to MDC. ECF No. 207-2 at 27:24–28:3; ECF No. 207-3 at 30:9–15; SMF ¶ 24. Plaintiff testified that according to Chopra and his partner, the tour commander ordered the bus to stay on Rikers Island overnight. ECF No. 203-2 at 72:13–73:4. Chopra also testified that transport buses departing from MDC are always ordered by the tour commander to stay at the site of the receiving facility if the facility does not admit the passengers. ECF No. 207-3 at 45:11–22.

Plaintiff stated that the officers on the bus indicated that Rikers Island does not accept admissions after 8:00 p.m. ECF No. 203-3 at 17:15–25. According to Lake and Chopra, DOC also does not permit the return of incarcerated persons to the transferor facility because the transferor facility may lack housing capacity. ECF No. 207-8 at 24:24–26:6; ECF No. 207-3 at 45:11–20. According to Lake, DOC will send persons for transfer to Rikers Island even if a facility declares that they are not accepting admissions. ECF No. 207-8 at 21:24–22:12. As a result, during the time of Plaintiff's transfer, it was common for transferred incarcerated individuals to stay on transfer buses overnight. ECF No. 207-3 at 22:7–14, 26:18–27:11. On the night of August 16, 2016, Chopra and his partner did not transfer any incarcerated individuals from the bus into any Rikers Island facilities, except for one passenger who may have been admitted to the Eric M. Taylor Center around 11 p.m. or midnight. SMF ¶¶ 21, 22, 26; ECF No. 203-3 at 25:18–22; 27:1–5.

Plaintiff and the incarcerated passengers were left to languish on the bus overnight, parked on Rikers Island, until the next morning. SMF ¶¶ 25–26. The officers on the bus repeatedly got off and on the bus in order to, it appears, talk to other officers, use the restroom, and get food and water, but none of the incarcerated passengers were permitted to disembark. ECF No. 203-3 at 16:22–18:21, 23:1–23:24, 27:1–28:25, 30:1–31:15. While on the bus, Plaintiff did not have access to food or water. SMF ¶ 27. Plaintiff testified that he was suffering from nausea, dizziness, headache, and overheating, and asked the officers on the bus for medication or to take him to the medical facility, but was rebuffed in harsh terms. ECF No. 203-3 at 23:25–24:23; ECF No. 203-2 at 39:1–3; 40:14–18. Plaintiff also did not have access to a bathroom on the bus. SMF ¶ 27. Without access to a bathroom, and at the indication of the officers on the bus, the incarcerated individuals on the bus were forced to use the back of the bus to urinate and defecate. SMF ¶¶ 28–30; ECF No. 203-3 at 30:20–31:4, 36:12–24. The passengers on the bus,

including Plaintiff, vomited due to the odor of the buildup of urine and feces. SMF ¶ 30, ECF No. 203-3 at 35:14–24. They also repeatedly asked for food, water, and access to a restroom, but none were provided. ECF No. 203-3 at 28:11–31:4. Several passengers (not Plaintiff) suffered cuts from the broken glass, which moved around while the bus was in motion. ECF No. 203-3 at 39:20–40:24; ECF No. 203-2 at 87:3–7. Plaintiff was in handcuffs (as were all the incarcerated passengers), which he says were excessively tight, for the entire time on the bus. ECF No. 203-2 at 68:6–13, 82:14–20, 85:18–22; ECF No. 203-3 at 31:10–17.

On the morning of August 31, 2016, defendant COs Cedric Carter and Kevin Anderson relieved Chopra and his partner from the transport bus while it was still parked at Rikers Island. SMF ¶ 31. At some point that same morning, personnel at AMKC were informed that passengers were refusing to get off of a bus parked outside their facility. SMF ¶¶ 35–37. Thereafter, nonparties Timothy Johnson and Michelle Gumbs-Francis, AMKC employees with the rank of Captain, boarded the bus. ECF No. 203-3 at 44:24–45:2; SMF ¶¶ 36–37, 39–40. Plaintiff testified that when Captain Johnson first boarded the bus, the incarcerated passengers, including Plaintiff, asked Johnson for the names of the officers involved in their overnight detention on the bus in order to file grievances. ECF No. 207-2 at 49:4–20. According to Plaintiff, Johnson then threatened the passengers, including by stating that he would have "the Bloods" hurt the passengers if they entered AMKC. *Id.* at 45:10–46:3. Plaintiff and the other passengers remained on the bus. *Id.*; SMF ¶ 41. According to Plaintiff, after Johnson left the bus, defendant AMKC Warden Maxsolaine Mingo boarded the bus and warned the incarcerated passengers that the Emergency Services Unit ("ESU") would be coming to get the passengers off the bus. ECF No. 207-2 at 48:6–11, 50:12–22. Plaintiff stated that he then requested to leave the bus, but that Warden Mingo refused to listen. *Id.* at 51:12–20.

ESU was called to respond to the "hot bus," which refers to a "dangerous condition" involving a DOC bus that requires ESU assistance. SMF ¶¶ 43–44. At least five DOC personnel boarded the bus, including defendants Captain Mark Daniels, Captain Walter Ross, CO Edwin Lopera, CO Daniel Ortiz, and CO Alason Henry, all of whom were present when oleoresin capsicum, or "OC" spray, through an MK-9 canister, was deployed on the passengers of the bus. SMF ¶¶ 46, 52–54; ECF No. 207-11 at 40:7–14. According to Captain Daniels, he warned the passengers that force would be used if they did not disembark. SMF ¶ 48; ECF No. 203-12 at DEF000095. According to CO Ortiz, passengers threatened to cut him with broken glass if he opened the gate to the passenger cabin of the bus. SMF ¶ 49; ECF No. 203-9 at 29:14–25; 34:1–9. Defendant officers also stated that two non-party passengers attempted to cut themselves with glass. SMF ¶ 50; ECF No. 203-9 at 32:14–17; 34:1–21; 34:24–35:16; ECF No. 203-12 at DEF000095; ECF No. 203-13 at DEF000072. Plaintiff testified to the contrary—that he did not observe any incarcerated passenger threaten to cut an officer or attempt to cut themselves with glass. ECF No. 207-2 at 42:14–43:1.

On Daniels' order, Ortiz and Henry sprayed OC spray on the passengers of the bus. SMF ¶ 51–52. Daniels, Ross, and Ortiz noted sprays of one to two seconds in duration in their use of force reports. ECF Nos. 203-12, 203-14, 203-15. According to Plaintiff, he was sprayed twice. ECF No. 203-4 at 22:17–23:4. After the first spray, the passengers tried to get air through the windows of the bus, but ESU officers in riot gear and face masks sprayed through the windows from outside the bus. ECF No. 203-4 at 16:2–17:25, 20:11–22:21. Plaintiff demanded to be let off the bus. *Id.* at 22:22–24. An officer then told Plaintiff to come up and sit towards the front of the bus, after which the officer sprayed Plaintiff's face, head, shoulders, and upper body with the OC spray for what felt like 30 seconds. *Id.* at 22:24–23:4, 25:14–17; SMF ¶ 60. Plaintiff put his

head down to try to avoid the effects of the pepper spray, as did all the passengers, but the spray dripped down his head, neck, shoulders and back. ECF No. 203-12; ECF No. 203-4 at 25:14–21.

Plaintiff reported injuries, namely that his skin felt like it was melting off his face and head, and that he was suffering from faintness and headaches. *Id.* at 33:5–12. Plaintiff was finally taken off the transport bus and into AMKC between 10:00 and 11:00 that morning, but testified that he was not given medication, topical ointments or bandages to treat the parts of his body exposed to OC spray. SMF ¶ 61; ECF No. 207-2 at 43:2–6; ECF No. 203-4 at 27:21–28:6. Once inside the facility, Plaintiff was permitted to shower within approximately one hour, and washed himself with soap and water sometime before showering. SMF ¶¶ 62–63. According to Plaintiff, the water in the shower was hot, which activated the effects of the residual OC spray. ECF No. 203-4 at 29:23–25.

At approximately 3:08 p.m., Plaintiff received medical attention for exposure to a chemical agent. SMF ¶ 64. The doctor's notes from Plaintiff's medical visit deferred diagnosis and noted no sign of injury, but Plaintiff maintains that he complained of burning skin, dizziness and headaches stemming from exposure to MK-9. SMF ¶ 65; ECF No. 203-4 at 33:5–12; ECF No. 203-17. Plaintiff also states that he was not asked any follow-up questions about his injuries. ECF No. 203-4 at 33:13–15.

### B. Procedural History

Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and costs, under 42 U.S.C. § 1983 for violation of his rights under the Eighth Amendment. ECF No. 159 ("Second Amended Complaint" or "SAC") ¶ 1. Plaintiff brings three claims—excessive use of force, unconstitutional conditions of confinement resulting in the deprivation of basic human needs, and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Id.* ¶¶ 13–50.

Plaintiff was incarcerated at Clinton Correctional Facility in Dannemora, New York, when he commenced this action on March 23, 2018.7 ECF No. 2 ¶ 4. At that time, Plaintiff was unable to identify certain defendant officers and named them as John Does. ECF No. 2 ¶¶ 8–27, 31, 33, 36–43, 46–51. Plaintiff named the drivers of the transport bus on the night of August 30, 2016 as John Does 6 and 7. *Id.* ¶¶ 38–43, 63, 64. Plaintiff identified the supervising officer who provided orders to John Does 6 and 7 on the night of August 30, 2016 as Captain Williams. *Id.* ¶¶ 6, 31, 40, 62.

On August 25, 2018, the Court ordered Corporation Counsel for the City to ascertain the identities and badge numbers of the John Does that Plaintiff sought to sue in his original complaint pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). ECF No. 8 at 2. In response to the Court's *Valentin* order, Corporation Counsel identified several individuals, including Captain Williams, but did not identify either Defendant Lake or Defendant Chopra. ECF Nos. 15, 21, and 32. Plaintiff named the identified individuals as defendants in his First Amended Complaint, which he filed on December 6, 2018. ECF No. 34.

Plaintiff was appointed limited pro bono counsel for the purposes of discovery on March 22, 2019. ECF No. 45 at 5–6. During the course of discovery, the City identified, by supplemental disclosure dated November 22, 2021, Defendant Chopra as the transport bus driver and Defendant Lake as the tour commander on duty on the night of August 30, 2016. ECF No. 91 at 2.

Plaintiff's *pro bono* representation concluded upon the close of discovery on August 25, 2022. ECF No. 117. Subsequently, Plaintiff moved for the appointment of new pro bono counsel, which was denied. ECF Nos. 118, 132. On March 30, 2023, Defendants filed their first motion for summary judgment. ECF No. 125. Plaintiff, *pro se*, filed a brief in opposition and therein sought leave to file a second amended complaint. ECF Nos. 135–136; ECF No. 141 at 4, 8.

On March 8, 2024, the Court granted in part and denied in part Defendants' first motion for summary judgment. ECF No. 152. The Court determined that Plaintiff's claims for unconstitutional conditions of confinement and excessive use of force generally survive summary judgment, but reserved decision on whether Plaintiff established the requisite personal involvement of each Individual Defendant to recover damages under Section 1983. *Id.* at 46–47; *see id. generally*. The Court also reserved summary judgment decision on Plaintiff's *Monell* claims. *Id.* at 50–53.

The Court ordered the appointment of *pro bono* counsel and permitted Plaintiff to file a second amended complaint, which Plaintiff did on June 7, 2024. ECF No. 152 at 47–50; SAC. Plaintiff's SAC names Defendant Munish Chopra as one of the two transport bus drivers on the night of August 30, 2016 and replaces the mistakenly identified Captain Williams with Defendant Enjoli Lake (formerly known as Enjoli Murria). SAC ¶¶ 6, 7, 21, 23–28, 45. On August 23, 2024, Defendants filed the instant motion to dismiss claims against Defendants Chopra and Lake as time-barred, or, in the alternative, for summary judgment as to the same claims. ECF Nos. 201, 205 ("Mot."). Pursuant to the Court's reservations in its March 8, 2024 order (ECF No. 152), Defendants also renew their motion for summary judgment for Defendants Mingo, Ross, Anderson, Carter, Daniels, Lopera, and the City of New York. Mot. at 1. Plaintiff filed his opposition on September 23, 2024 under seal pursuant to the Stipulation of Confidentiality and Protective Order at ECF No. 161. ECF No. 206. On October 24, 2024, Plaintiff requested to unseal portions of his filings. ECF No. 217. On September 18, 2024, the Court held oral argument on these motions.

Should the case proceed to trial, Plaintiff moves to attend trial in civilian clothes and without the restraint of shackles, to which Defendants do not object. ECF Nos. 172, 173.

**LEGAL STANDARD**

9

The Court reviews Defendants' motion to dismiss claims against Chopra and Lake under Federal Rules of Civil Procedure 12(b)(6) and 15. The Court examines the remaining claims under a Rule 56 standard.

### A.  Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). In deciding whether a complaint meets this requirement, a court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). Even where a document is not incorporated by reference, "the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal quotation marks omitted).

### B.  Rule 56 Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

## DISCUSSION

This discussion proceeds in five sections. First, the Court determines that claims against Defendants Lake and Chopra are not time-barred under, respectively, Rule 15(c)(1)(C) and Rule 15(c)(1)(A). Second, the Court determines that genuine issues of material fact remain regarding the personal involvement and deliberate indifference of Defendants Lake, Anderson, Carter, and Chopra in Plaintiff's conditions of confinement claim. Likewise, genuine disputes of material

fact remain regarding the personal involvement of Defendants Mingo, Lopera, Ross, Daniels, Ortiz, and Henry in Plaintiff's excessive force claim. Fourth, Plaintiff fails to provide sufficient evidence to survive summary judgment with respect to municipal liability. Finally, the Court determines that all documents filed under seal in connection with these motions shall be unsealed, except that portions pertaining to privileged law enforcement procedures shall be redacted.

## I.    Claims Against Defendants Lake and Chopra Are Not Time-Barred

Section 1983 actions filed in New York are subject to a three-year statute of limitations. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see* N.Y. C.P.L.R. § 214 (McKinney 2024). Claims accrue when the plaintiff knows or has reason to know of the injuries forming the basis of the action, *see Pearl*, 296 F.3d at 80, which in this case was August 2016. As such, the statute of limitations for Plaintiff's claims arising out of this action elapsed in August 2019. Defendants contend that because Plaintiff did not name Lake or Chopra as defendants until June 5, 2024, nearly five years after the statute of limitations passed, these claims are time-barred. The Court disagrees and finds that claims against Lake relate back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1)(C), while claims against Chopra relate back under Rule 15(c)(1)(A).

### A.  Defendant Lake

Rule 15(c)(1)(C) permits the addition of a new party when such an amendment relates back to the date of the original pleading. Fed. R. Civ. P. 15(c)(1)(C). Plaintiff bears the burden of proving that the amendment relates back. *Liverpool v. Davis*, 442 F. Supp. 3d 714, 724 (S.D.N.Y. 2020). Relation back requires that the basic claim arose out of the conduct set forth in the original pleading, and, "within the period provided by Rule 4(m) for serving the summons and complaint [which is 90 days], the party to be brought in by amendment (i) received such notice

of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity." FED. R. CIV. P. 15(c)(1)(C); 4(m). Defendants do not dispute that the claims arose out of the conduct set forth in the original pleading. The Court addresses the remaining requirements of notice and mistake in turn.

First, the notice requirement does not need to be fulfilled by direct notice to the new defendant. "Courts have uniformly held that knowledge of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represented the officials originally sued." *DuPree v. Walters*, 116 F.R.D. 31, 34 (S.D.N.Y. 1987). "The constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period." *Velez v. Fogarty*, No. 06-CV-13186 (LAK) (HBP), 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008). To invoke this doctrine, there must be some showing that the attorney was aware that an additional defendant could be named, such that "it would be logical to assume that a reasonable attorney would either (1) inform his client of the prospective lawsuit or (2) take[] steps to begin preparing a defense." *Id.* at *6 (collecting cases); *see also Gleason v. McBride*, 869 F.2d 688, 692 (2d Cir. 1989).

District courts in this Circuit are divided over the degree of knowledge an attorney must have about an additional defendant under the constructive notice doctrine. Some have held that "[i]t is sufficient for the purpose of constructive notice that . . . counsel knew or should have known that a particular category of defendants would be added to the action, without necessarily knowing the actual identity of each defendant to be added." *Samuels v. Dalsheim*, No. 81-CV-7050 (PKL), 1995 WL 1081308 at *14 (S.D.N.Y. Aug. 22, 1995); *see also Velez v. Koehler,* No. 87-CV-2019 (KMW), 1991 WL 130913, at *2-3 (S.D.N.Y. July 8, 1991) (finding that a

13

complaint originally naming and describing the actions of a John Doe officer was sufficient to put corporation counsel on notice about the new defendant, even though corporation counsel had never spoken with the new defendant); *Abdell v. City of New York*, 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) (finding constructive notice applies "so long as there is some showing that the attorney knew that the additional defendants would be added") (cleaned up) (citing *Berry v. Village of Millbrook*, No. 09-CV-4234 (KMK), 2010 WL 3932289, at *5 & n.6 (S.D.N.Y. Sept. 29, 2010)); *Pape v. Board of Educ. of the Wappingers Central School Dist.*, No. 07-CV-8828 (KMK), 2009 WL 3151200, at *13 (S.D.N.Y. Sept. 29, 2009) ("The inquiry is not whether defense counsel had actual knowledge but whether he knew or should have known that the additional defendants would be added within the statute of limitations period.") (cleaned up and internal citation omitted).  Others prefer "clear knowledge of the identity of the unidentified defendant" before the expiration of the statute of limitations. *Fogarty*, 2008 WL 5062601, at *6 (collecting cases that apply the constructive notice doctrine where the body of the original complaint describes the involvement of the new defendants and identifies those new defendants by name or by description).

Based on the foregoing cases and Second Circuit precedent, this Court follows the former approach. In the Second Circuit's *Gleason v. McBride*, the plaintiff proceeded with two lawsuits against two different sets of defendants, then sought to amend the complaints after the expiration of the statute of limitations to name defendants of one lawsuit as co-defendants in the other lawsuit. 869 F.2d at 693. Defendants of both lawsuits shared the same counsel. The Court nonetheless denied the application of constructive notice upon finding that "attorneys had no reason to believe" that new defendants would be named, because it appeared that the plaintiff "selectively named the parties he intended to sue in each action." *Id*. The Court found "no indication that counsel knew *or should have known*" that the new defendants would be named.

*Id.* (emphasis added). The Court's analysis was not merely concerned with what attorneys know, but with what attorneys should reasonably believe. Accordingly, this Court concludes that to invoke constructive notice, there must be an indication that counsel knew or reasonably should have known that a new defendant would be named but for mistake, such that the newly added defendant is not prejudiced by the lack of actual notice.

Applying this standard, the Court finds that Corporation Counsel, at a minimum, reasonably should have known that ADW Lake would be named as a defendant but for Plaintiff's mistake. In March 2018, Plaintiff's original complaint provided a name (Captain Williams) and a description of the actions that exposed this officer to liability (ordering the bus drivers to stay overnight on Rikers Island). ECF No. 2 ¶¶ 6, 31, 40, 62. Although Plaintiff mistakenly identified Captain Williams as the tour commander on the night of August 30, 2016, counsel should have been able to recognize the mistake and identify ADW Lake as the intended defendant. In August of 2018, shortly before the filing of the First Amended Complaint, the Court ordered Defendants to investigate and disclose the identities of the unnamed officers, which Defendants did in part. ECF Nos. 8, 21. Either as a part of preparing a defense or of investigating the identities of the John Does, a reasonable attorney should have spoken to his client, Williams, or reviewed records pertaining to the transport—either of which should have indicated a mistake in identity. *See, e.g.*, ECF No. 207-4. Moreover, the Court finds the risk of prejudice against Defendant Lake to be minimal, given that Corporation Counsel knew from the original complaint the factual basis of any claims against Defendant Lake. The notice requirement is met.

The mistake requirement is also met. Plaintiff mistakenly identified the tour commander as Captain Williams. Nonetheless, Plaintiff's original complaint and First Amended Complaint identify the date of the transport, the events that transpired, and the involvement of the tour commander. ECF No. 2 ¶¶ 31–43, 62; ECF No. 34 ¶¶ 29 –35, 49; *see* ECF No. 91. Plaintiff

simply mistakenly identified Captain Williams instead of Defendant Lake, which was not an unreasonable mistake given that this information would be squarely within in the possession of Defendants and not something Plaintiff could ascertain on his own.

Defendants, however, contend that Plaintiff's three-year delay in adding Defendants Lake and Chopra after Corporation Counsel disclosed their identities indicates that Plaintiff was not merely "mistaken" as to the proper defendant's identity. ECF No. 216 ("Reply") at 3–4; Mot. at 11–12. However, under Rule 15's mistake requirement, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). "[T]he speed with which a plaintiff moves to amend her complaint . . . has no bearing on whether the amended complaint relates back." *Abdell*, 759 F. Supp. 2d at 458 (ellipsis in original) (quoting *Krupski*, 560 U.S. at 553). "The only question under Rule 15(c)(1)(C)(ii) . . . is whether [the new defendant] knew or should have known that, absent some mistake, the action would have been brought against him." *Krupski*, 560 U.S. at 549.

Defendants cite to two inapposite cases for their argument that claims against Lake fail to meet the mistake requirement. *See* Mot. at 11, Reply at 3–4. First, in *Simon v. City of New York*, the Eastern District of New York denied a plaintiff leave to amend when plaintiff sought to add *new claims*—an analysis that does not proceed under Rule 15(c)(1)(C) for the addition of *new defendants*, which is the applicable rule here. No. 09-CV-1302 (ENV) (RER), 2011 WL 317975, at *6 (E.D.N.Y. Jan. 3, 2011), *report and recommendation adopted*, No. 09-CV-1302 (ENV), 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011). Moreover, the court's analysis in *Simon* emphasized that plaintiff's new claims were based upon information plaintiff herself could have accessed—distinguishable here, because Plaintiff Colson could not have known the identity of Lake without Defendants' disclosure. *See id* at *7.

Second, in *Aberra v. City of New York*, a court in this District denied leave to amend when the plaintiff belatedly sought to add three additional John Doe defendants and previously informed the defendants that he would not be filing an amended complaint naming those defendants. No. 18-CV-01138 (LAK) (SLC), 2020 WL 11772386, at *17 (S.D.N.Y. July 31, 2020), *report and recommendation adopted*, No. 18-CV-1138 (LAK), 2020 WL 11772387 (S.D.N.Y. Aug. 24, 2020). Here, Lake was not named as a new John Doe defendant but as a correction of the misidentified Captain Williams, and Plaintiff has always maintained an intent to sue the officers involved in having his transport bus stay overnight on Rikers Island. Neither case offers controlling or supporting authority for a dismissal of the claims against Lake.

Defendants further suggest that the Court should deny amendment because Plaintiff's delay was "inexcusably neglectful." Reply at 3. But the movant's neglect is not a factor in a relation back analysis under Rule 15(c)(1)(C). Accordingly, Plaintiff's claims against Defendant Lake relate back under Rule 15(c)(1)(C) and may proceed.

### B. Defendant Chopra

Rule 15(c)(1)(A) provides that an amendment to a pleading relates back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back." New York C.P.L.R. § 1024 allows plaintiffs to substitute for John Doe defendants *nunc pro tunc* if two requirements are met: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (cleaned up).

Plaintiff has satisfied both requirements. Plaintiff named Chopra as a John Doe bus driver in his original complaint. ECFs No. 2 ¶¶ 38–43, 63, 64. As Defendants note, *see* Reply at 5, the docket does not reflect any extraordinary effort on Plaintiff's part to identify the John Does, but

that is because the Court ordered Defendants to disclose their identities. ECF No. 8. Moreover, Plaintiff, as an incarcerated person proceeding *pro se* for the first several months of this litigation, may have been understandably limited in the efforts he could make to identify the John Does. Plaintiff instead relied upon Defendants' August 2018 disclosure wrongly identifying one such driver as Defendant Carter. ECF No. 21. It was not until years after the statute of limitations had expired that Defendants corrected the identification of Carter to Chopra in a supplemental disclosure. ECF No. 91 at 2. The Court finds that Plaintiff exercised due diligence to identify Chopra by name. *See Hogan*, 738 F.3d at 519 (determining that a plaintiff who fails to identify a John Doe within the statute of limitations has exercised due diligence when his efforts were frustrated by defendants).

Likewise, Plaintiff meets the second Section 1024 requirement. His "complaint describes with particularity the date, time, and location of the alleged [transport] incident. . . . [Plaintiff's] complaint, in short, provide[d] enough detail to give notice to the John Does that they are the intended defendants." *Id.* Specifically, Plaintiff's original and first amended complaints detail an intent to sue the driver of the transport bus on August 30, 2016, who informed Plaintiff they had been ordered to stay on the bus overnight at Rikers Island, and subsequently denied Plaintiff access to food, water, and a bathroom. ECF No. 2 ¶¶ 38–43, 63, 64; ECF No. 34 ¶¶ 29 –35, 49, 50. Claims against Defendant Chopra relate back under Rule 15(c)(1)(A) and § 1024, and may proceed.

## II.    Genuine Issues of Material Fact Remain Regarding Defendants' Liability for Unconstitutional Conditions of Confinement

This Court has already determined in a previous summary judgment order that sufficient facts exist for a reasonable jury to conclude that the conditions on the transport bus were unconstitutional. ECF No. 152 at 22–33. Defendants Lake, Carter, and Anderson argue that they

were not personally involved in Plaintiff's conditions of confinement claim and they did not act

with the requisite state of mind, *i.e.* deliberate indifference, for an Eighth Amendment claim to

succeed. Defendant Chopra seeks summary judgment on the contention that he did not act with

deliberate indifference. Defendants further contend that qualified immunity applies. The Court

finds genuine issues of material fact exist regarding the personal involvements of Defendant

Lake, Carter, and Anderson, as well as regarding whether Defendant Chopra acted with

deliberate indifference, and denies summary judgment with respect to qualified immunity.

### A. Personal Involvement and Deliberate Indifference

The Court first sets forth the law applicable to these arguments.

A plaintiff seeking monetary damages against individual defendants under Section 1983

must demonstrate that each officer was personally involved in depriving him of his constitutional

rights. *See Grullon v. City of New Haven,* 720 F.3d 133, 138–39 (2d Cir. 2013) (collecting cases).

A plaintiff may establish personal involvement by showing that: (1) the defendant participated

directly in the alleged constitutional violation, (2) the defendant, after being informed of the

violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a

policy or custom under which unconstitutional practices occurred, or allowed the continuance of

such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (internal citation omitted). In the context of Section 1983 supervisory claims, a

plaintiff "must demonstrate both that the defendant was 'aware of the facts from which the

inference could be drawn that a substantial risk of serious harm existed, and that the defendant

also drew the inference.'" *Elting v. Lassiter*, No. 22-CV-8573 (PGG), 2023 WL 8699454, at *5

(S.D.N.Y. Dec. 14, 2023) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020)) (cleaned up).

Moreover, to state an Eighth Amendment claim based on conditions of confinement, a plaintiff must allege that the defendant official acted with a "sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In other words, an official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

### B. Defendant Lake

Based on the evidence presented before the court, a reasonable jury could conclude that Defendant Lake was personally involved and deliberately indifferent. Although the evidence does not suggest that Lake was present on the transport bus, Chopra testified that it was his practice to keep the tour commander, ADW Lake, apprised of the situation on the transport bus. ECF No. 207-3 at 23:4–20. Chopra also testified that on the night of August 30, 2016, he called Lake to discuss whether they could bring the incarcerated passengers back to MDC. ECF No. 207-2 at 27:24–28:3; ECF No. 207-3 at 30:9–15. Chopra testified that transport buses departing from MDC are always ordered by the tour commander to stay at the site of the receiving facility if the facility does not admit the passengers. ECF No. 207-3 at 45:11–22. A reasonable jury can infer that Lake was informed of the situation on Rikers Island and nonetheless ordered the bus to remain there overnight.

Defendant Lake argues that because she "could not practically order the bus to return the inmates to MDC," she was not acting with deliberate indifference but adhering to policy. Mot. at 14 and n.7. But deliberate indifference is not "addressed by whether an official followed a . . . directive." *Davidson v. Coughlin*, 920 F. Supp. 305, 310 (N.D.N.Y. 1996). Instead, the question is whether Lake was "aware of [the] facts from which the inference could be drawn that a substantial risk of serious harm existed," and whether Lake "also drew the inference." *Elting*, 2023 WL 8699454, at *5 (cleaned up) (citing *Farmer*, 511 U.S. at 837). This is a matter determined by the extent of Lake's knowledge when she issued the order that resulted in the bus's overnight stay on Rikers Island. Given that Chopra has testified that it was his practice to inform the tour commander of a transport situation, the Court finds that the extent of Lake's knowledge about the conditions at issue, and therefore her personal involvement and state of mind, is a genuine dispute of material fact for the jury to resolve.

### C.  Defendants Anderson and Carter

A reasonable jury may also find that Defendants Anderson and Carter were personally involved and deliberately indifferent. Defendants contend that because they relieved the overnight bus drivers at 8:00 a.m., and the passengers were removed from the bus only a few hours later, their limited knowledge of the circumstances negate their personal involvement and requisite state of mind. Mot. at 14–15. But it seems to the Court that some conditions of the bus must be obvious from observation—most noticeably, the build-up of urine, feces, and vomit within the bus. *See* SMF ¶¶ 28–30, 32; ECF No. 203-3 at 30:20–31:4, 35:14–24, 36:12–24. Moreover, it does not appear that Anderson and Carter released Plaintiff or anyone else from the bus for a food, water, or bathroom break until ESU arrived and removed the passengers from the bus. ECF No. 207-2 at 43:2–23. As for what Anderson and Carter could infer from the observable conditions and whether their subsequent inaction amounts to personal involvement

and deliberate indifference, that is a matter of genuine dispute for the jury to resolve. *See, e.g.*, *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) (finding that a reasonable jury could infer deliberate indifference from circumstances indicating an official had knowledge of an unconstitutional condition and did not try to remedy it); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cnty. of Orange*, 248 F. App'x 232 (2d Cir. 2007) (similar).

### D.  Defendant Chopra

Defendant Chopra contends that because he attempted to prevent an overnight stay on the bus by driving to multiple Rikers Island facilities to seek admission for the passengers and by requesting the tour commander that the passengers be returned to MDC, he was not deliberately indifferent. *See* Mot. at 15–16. But an overnight stay on the bus is not the sole basis for Plaintiff's conditions of confinement claim. Plaintiff was denied food, water, and access to a bathroom while he was confined. SMF ¶¶ 27. Plaintiff has testified that he, along with other passengers, made requests for food, water, and access to a bathroom to Chopra and his partner. ECF No. 203-3 at 28:11–31:4. They were denied. *Id.* They were forced to urinate, defecate, and vomit during Chopra's shift. SMF ¶¶ 28–30, 32; ECF No. 203-3 at 30:20–31:4, 35:14–24, 36:12–24. They were restrained in excessively tight handcuffs throughout the night. ECF No. 203-2 at 68:6–13, 82:14–20, 85:18–22; ECF No. 203-3 at 31:10–17. No evidence suggests that Chopra attempted to relieve Plaintiff of these conditions throughout the night. A reasonable jury likewise could find that Chopra acted with deliberate indifference to the unconstitutional conditions of Plaintiff's confinement. *See Davidson*, 920 F. Supp. at 309–10 (finding genuine dispute of material fact regarding deliberate indifference when officials were aware of the deprivation of basic human needs and did not remedy it); *Price v. Reilly*, 697 F. Supp. 2d 344, 363–64

(E.D.N.Y. 2010) (denying summary judgment where plaintiff repeatedly complained of injuries and defendants failed to address the injuries).

### E.  No Qualified Immunity

Defendants contend that qualified immunity applies to each Defendant in this section because it was "objectively reasonable for him to believe that his behavior did not violate the [plaintiff's] clearly established constitutional rights."  Mot. at 16 (quoting *Lennon v. Miller*, 66 F.3d 416, 418 (2d Cir. 1995)); *see* Mot. *generally*. It is well settled in the Second Circuit that a defendant's ability to rely on qualified immunity from liability is a question of law for the court to decide on summary judgment only when "the factual record is not in serious dispute." *Lennon*, 66 F.3d at 421 (internal citation omitted). The Court has already determined both in this Order and in the Court's prior order on summary judgment that the factual record is sufficiently disputed such that this issue survives this stage. *See* ECF No. 152 at 33–38; *supra,* Section II.A–D. Accordingly, the Court denies summary judgment on qualified immunity.

### III.    Genuine Issues of Material Fact Remain Regarding Defendants' Liability for Use of Excessive Force

As with the claims for conditions of confinement, the Court has already ruled in a previous order that genuine issues of material fact exist regarding whether Plaintiff suffered injury from the use of excessive force. ECF No. 152 at 38–46. Defendants Mingo, Ross, Lopera, and Daniels now seek summary judgment for lack of personal involvement. The Court finds that there is sufficient evidence about each Defendant's personal involvement to survive summary judgment.

### A.  Defendant Mingo

Defendant Mingo argues that she lacked the requisite personal involvement to be liable for excessive use of force because she was not present when the passengers were sprayed and

because she did not order the use of the spray. Mot. at 16–17. Plaintiff does not dispute that

Mingo was not present during the use of OC spray, but does claim that Mingo ordered the ESU

team to use chemical agents on the passengers. In other words, claims against Mingo are

supervisory claims, for which Plaintiff "must demonstrate both that the defendant was aware of

the facts from which the inference could be drawn that a substantial risk of serious harm existed,

and that the defendant also drew the inference." *Elting*, 2023 WL 8699454, at *5 (cleaned up). In

an Eighth Amendment excessive force claim, the "substantial risk of serious harm" must be one

that is an "unnecessary, and wanton infliction of pain." *Javier v. Russo*, No. 21-CV-7097 (VB),

2023 WL 5532468, at *7 (S.D.N.Y. Aug. 28, 2023).

The record presents a genuine dispute of material fact about whether Mingo was aware

the passengers and Plaintiff would be sprayed while cuffed and unthreatening, which the Court

has already determined may constitute "an objectively serious, unnecessary, and wanton

infliction of pain in violation of the Eighth Amendment." ECF No. 152 at 40–41 (citing *Javier*,

2023 WL 5532468, at *7). Plaintiff testified that after demanding the names of officers involved

in their overnight detention on the bus in order to file grievances, Mingo boarded the bus and

warned the incarcerated passengers that the ESU would be coming to get the passengers off the

bus. ECF No. 207-2 at 48:6–11, 49:4–20, 50:12–22. Mingo's presence on the bus implies that

Mingo observed the passengers in handcuffs. *See* ECF No. 203-2 at 68:6–13, 82:14–15, 85:18–

22; ECF No. 203-3 at 31:10–17. Moreover, Plaintiff testified that he requested to leave the bus,

but that Mingo refused to listen—a fact indicating that Mingo perceived Plaintiff's lack of

resistance. ECF No. 203-3 at 51:12–20. A reasonable jury could conclude that Mingo had

sufficient information to know that the use of a chemical spray would be excessive.

While Mingo now contends that she did not order or know about the use of the spray, this

fact is also disputed. Indeed, Mingo previously admitted in her first answer to the allegations in

this case that she "authorized the use of chemical agents if the inmates continued to disobey orders to exit" the bus. ECF No. 20 ¶ 46.  Plaintiff's testimony further suggests that Mingo may have ordered ESU's interference regardless of whether or the passengers were responding to orders to leave the bus: Plaintiff stated that when he asked Mingo if he could disembark from the bus before the arrival of ESU, Mingo refused to listen. ECF No. 203-3 at 51:12–20. A reasonable jury could infer that Mingo ordered or, at a minimum, knew about the use of the spray. Claims against Mingo accordingly survive summary judgment.

### B. Defendants Ross and Lopera

Defendants Ross and Lopera contend that because they did not use the chemical spray, and because Plaintiff does not raise a failure to intervene claim in the SAC, they lack the requisite personal involvement to be held liable. Mot. at 20–21. The Court disagrees.

As an initial matter, it would be improper for the Court to resolve this claim under a pleadings standard on Defendants' motion for summary judgment. *Lugo v. City of Troy*, 114 F.4th 80, 89 (2d Cir. 2024) ("When a district court resolves a summary-judgment motion as a pleadings motion, it disregards the more robust procedural device the parties have invoked to frame the issue and thus unjustifiably ignores the fuller evidentiary record assembled by the parties.") (internal citation omitted) (cleaned up).

Second, Plaintiff's use of excessive force claim covers liability for the failure to intervene when another officer uses excessive force. *See McGrier v. City of New York,* 849 F. App'x 268, 272 (2d Cir. 2021) ("To be found liable for excessive force, [a defendant] must have either used excessive force himself or failed to intervene, despite having a 'realistic opportunity' to do so, to prevent another officer from applying excessive force.") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 2021)). Liability for failure to intervene attaches when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's

position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Defendants nonetheless argue that they did not fail to intervene because they reasonably did not know that Plaintiff's rights were being violated and even if they did, they did not have a realistic opportunity to intervene. Mot. at 20–21. But this matter must go to the jury. First, Defendants admit that Lopera and Ross were present on the bus when OC spray was deployed. SMF ¶¶ 46, 52–54. A bus is a limited, enclosed space; a reasonable jury may infer that within this limited space, Lopera and Ross observed that the passengers were cuffed and, according to Plaintiff, non-resistant, and therefore the use of a spray would be excessive. *See* ECF No. 207-2 at 42:14–43:1; ECF No. 203-2 at 68:6–13, 82:14–15, 85:18–22; ECF No. 203-3 at 31:10–17; ECF No. 152 at 40–41. Although Defendants contend that passengers used the broken glass on the bus to threaten the officers and themselves, Plaintiff's contrary testimony puts this issue into dispute. *Compare* SMF ¶ 49, 50; ECF No. 203-9 at 29:14–25; 32:14–17; 34:1–35:16; ECF No. 203-12; ECF No. 203-13 *with* ECF No. 207-2 at 42:14–43:1.

Whether Defendants had a realistic opportunity to intervene is also in dispute. Plaintiff testified that officers deployed the spray multiple times. ECF No. 203-4 at 22:17–23:4. One of the sprays was directly upon him for "what felt like 30 seconds." *Id.* at 25:14–17; SMF ¶ 60. Construing this evidence in the light most favorable to Plaintiff, a reasonable jury can infer that the whole incident of spraying lasted long enough for a person to intervene. Because there is no evidence that Ross or Lopera did intervene, claims against them survive summary judgment.

### C.  Defendant Daniels

Defendant Daniels argues that he lacks the requisite personal involvement because he did not order anyone to directly spray Plaintiff. Mot. at 21–22. But Defendants concede in their statement of facts that Captain Daniels issued the order to spray passengers. SMF ¶ 51–52. As discussed in the preceding subsection, whether Daniels issued the order in response to threats posed by the passengers or in the absence of resistance is in dispute. Moreover, even if Daniels did not order officers to spray Plaintiff directly for "what felt like 30 seconds," Daniels may be liable for failure to intervene under the same analysis applied to Ross and Lopera. Accordingly, the claim against Daniels survives summary judgment.

### D.  Defendants Ortiz and Henry

Defendants Ortiz and Henry both admit to deploying the spray on the passengers. SMF ¶ 51–52. Defendants now contend that Plaintiff's excessive force claim should be limited to the officer whom Plaintiff alleges sprayed him directly. Mot. at 17–18. However, Plaintiff's testimony suggests he was sprayed twice. *See* ECF No. 203-4 at 22:17–23:4. As discussed previously, there remains a genuine dispute of material fact regarding whether Defendants Ortiz and Henry only sprayed passengers who posed threats or if they broadly sprayed passengers who were not resisting, including Plaintiff. *See supra* Section III.B; *see also Atkins*, 372 F. Supp. 2d at 401 (denying summary judgment on an excessive force claim though defendants contend they did not intentionally assert excessive force on the plaintiff, because genuine issue of fact exists regarding "the amount of force used" and "the intent with which it was applied"). Claims against Ortiz and Henry survive summary judgment.

## IV.    Plaintiff's Claims Against the City Do Not Survive Summary Judgment.

Plaintiff alleges Section 1983 municipal liability pursuant to *Monell*, 436 U.S. 658 (1978) for (1) unconstitutional policy, procedures, and customs resulting in the deprivation of basic

human needs and (2) widespread practice, as well as failure to train and supervise officers regarding proper use of force, resulting in the use of excessive force. ECF No. 159 ¶¶ 48–50. Setting forth the applicable standards under *Monell*, the Court determines that Plaintiff has failed to come forward with sufficient evidence of municipal liability for unconstitutional conditions of confinement and excessive use of force.

### A.  No Municipal Liability for Unconstitutional Conditions of Confinement

To hold a municipality liable under Section 1983 for an alleged constitutional violation, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). The Court has already determined that whether Plaintiff was denied a constitutional right to basic humans needs survives summary judgment. The discussion here focuses on whether a challengeable official policy or practice exists.

There are four ways to demonstrate the existence of a policy or custom: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions taken by a municipal official with final policymaking authority; (3) a practice so consistent and widespread that it constitutes a custom or usage; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees. *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016); *see also Monell*, 436 U.S. at 690–91; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff alleges that "the City had a policy and practice that ensured Mr. Colson spent the night on the bus without his basic necessities." ECF No. 206 ("Opp.") at 20. Because the *Monell*

analysis for an unconstitutional policy differs from the analysis for an unconstitutional practice, the Court examines the arguments separately.

First, the Court determines that the City did not have a policy of keeping incarcerated individuals on buses overnight without access to necessities. Indeed, Plaintiff conceded this point at oral argument. The evidence shows that the City has a policy on timely inter-facility transfers to ensure that "any inmate transferred from a facility is housed at the receiving facility within 8–12 hours or less." ECF No. 207-16 at DEF001193. Six of these hours are allotted for processing at the sending and receiving facilities. *Id.* at DEF001201. Two hours are allotted for the actual transportation of the incarcerated individual. *Id.* Four additional hours are allotted for delays. *Id.* at 1193. In other words, City policy actually prohibits the detention of incarcerated individuals on a transfer bus for longer than two to six hours.

Second, Plaintiff has failed to provide sufficient evidence that the City had an unconstitutional practice of keeping incarcerated individuals on buses without access to necessities. To do so, Plaintiff must have shown "a practice so consistent and widespread that . . . it constitutes a custom or usage." *Jones*, 182 F. Supp. 3d at 158 (internal citation omitted). Moreover, there must be "sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 298 (2d Cir. 2020) (internal citations omitted). Plaintiff has put forth evidence that it was common practice for transferred incarcerated individuals to be detained on transfer buses overnight, in contravention of official policy. *See* ECF No. 207-3 at 22:7–14, 26:18–27:11. The Court cannot assume, and Plaintiff puts forth no evidence to suggest, that incarcerated individuals in these other instances were denied necessities in the same manner as occurred in this case. As such, Plaintiff has not proffered any evidence that these detentions resulted in constitutional violations aside from his own case. The Court

therefore grants summary judgment in the City's favor on Plaintiff's claim against it for unconstitutional conditions of confinement.

### B. No Municipal Liability for Use of Excessive Force

Plaintiff argues that the City had a "custom and routine practice of allowing officers to engage in excessive force, shielding the officers from responsibility for the excessive use of force, and inadequately training their officers how to avoid using excessive force." Opp. at 21. The Court has already determined that whether Plaintiff suffered excessive use of force survives summary judgment. *See supra*, Section III. Because Plaintiff does not contend that he suffered from the use of excessive force as the direct result of executing a policy or at the hands of a final policymaker, he must establish municipal liability by showing the excessive force was the result of "a practice so consistent and widespread that it constitutes a custom or usage" or "a failure by policymakers to provide adequate training or supervision." *Jones*, 182 F. Supp. 3d at 158 (internal citation omitted).

As a preliminary matter, the Court discusses what evidence it may consider in assessing this claim. Plaintiff's brief largely relies upon reports by the court-appointed monitor in *Nunez v. City of New York*, No. 11-CV-5845 (LTS) (RWL). *See* Opp. at 21. However, the *Nunez* Consent Judgment prohibits the admission of the monitor reports in any other matter against the City. *See* Consent Judgement, § XX ¶¶ 21, 28, *Nunez v. City of New York*, No. 11-CV-5845 (LTS) (RWL) (S.D.N.Y. Oct. 21, 2015); *see also Nunez*, 2024 WL 4766911, at *3 (S.D.N.Y. Nov. 13, 2024).[1] The remaining evidence that Plaintiff relies on for this claim consists of six incidents where City

---

[1] This matter is now on appeal, and Plaintiff has requested that the Court delay decision on this *Monell* claim until the Second Circuit issues a decision. The Court declines to do so, although Plaintiff may move for reconsideration if the Second Circuit renders a favorable decision.

officers either used what could constitute excessive force or were dishonest in their use of force reports.

Though there is no bright-line rule for the number of instances a Plaintiff must prove to show that a practice is widespread, the Second Circuit has concluded that two or three instances "over a period of several years" perpetuated by "a small number of officers" is insufficient to establish *Monell* liability. *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012); *see also Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (holding that four instances of a practice over an unspecified time period "fall[] far short" of showing a widespread custom). Similarly, a court in this district has found that "[h]alf a dozen dissimilar incidents spread over the past five years fail, as a matter of law," to establish municipal liability. *White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016). Beyond the number of instances of a practice, courts have also considered whether the comparable instances of challenged conduct sufficiently show any violation of constitutional rights, such as through an adjudication of liability. *See Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) (emphasizing that a compilation of complaints on where there has been no adjudication of liability is not enough to show an unconstitutional practice for *Monell* purposes); *McCrae v. Town of Brookhaven,* No. 18-CV-7061 (NRM) (LB), 2024 WL 5120016, at *17–18 (E.D.N.Y. Dec. 16, 2024) (same); *but see Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 612–13 (S.D.N.Y. 2023) (holding that even when a police department's investigations of complaints result in no findings of wrongdoing, if there is evidence to doubt the sufficiency of the investigations, those complaints may still show an unconstitutional practice). In the absence of sufficient specific instances of conduct, statistical proof of a pattern of questionably constitutional acts may be enough for a *Monell* practice claim to survive summary judgment. *See Floyd v. City of New York*, 813 F. Supp. 2d 417, 446 (S.D.N.Y.), *on reconsideration*, 813 F. Supp. 2d 457 (S.D.N.Y. 2011) (finding issue

of disputed fact for *Monell* claim for unconstitutional stop-and-frisk practices where plaintiff provided statistics showing "the questionable constitutionality" of 30 percent of stops).

Under this framework, Plaintiff fails to show that half dozen incidents in the record, though individually reprehensible, amount to a "a practice so consistent and widespread that it constitutes a custom or usage." *Jones*, 182 F. Supp. 3d at 158 (internal citation omitted). Five of these incidents indicate that an officer used excessive force, with only four occurring in the relevant timeframe that would have put policymakers on notice before Plaintiff's incident. ECF Nos. 207-18, 207-19, 207-20, 207-22, 207-23, 207-24, 207-25. Five of these incidents indicate that an officer lied in their reports about use of force. ECF Nos. 207-18, 207-19, 207-21, 207-22, 207-23, 207-24, 207-25. The relevant incidents span from 2006 to 2013—seven years—in a densely populated institution, with little evidence that the final policymaker knew of each occurrence. *See Jones*, 691 F.3d at 82 (the prevalence of a practice should "support an inference that it must have been known and tolerated by" the policymaking officials). Moreover, Plaintiff does not offer proof that any of these incidents resulted in an adjudication of liability for the use of excessive force, or evidence that the DOC's investigation into any of these incidents was insufficient. Neither does Plaintiff offer the statistical numbers that show the likelihood of an unconstitutional practice. Weighing these factors together, these instances are insufficient as a matter of law to show a widespread practice necessary for municipal liability.

The Court turns next to whether such evidence demonstrates "a failure by policymakers to provide adequate training or supervision." *Jones*, 182 F. Supp. 3d at 158 (internal citation omitted). A municipality can be liable for failing to train its employees "where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton*, 489 U.S. at 387–90). In such a case, a plaintiff must offer evidence

regarding "the purported inadequacies in the . . . training program and the causal relationship between those inadequacies and the alleged constitutional violations." *Id.* Plaintiff has offered no such evidence here.

Plaintiff may also establish municipal liability through the failure to supervise if he proves that "the need for more or better supervision to protect against constitutional violations was obvious," but that the municipality, through its final policymaker, made "no meaningful attempt" to forestall or prevent the unconstitutional conduct. *Id.* at 127 (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). However, Plaintiff fails to identify a supervising final policymaker from whom to derive municipal liability. The evidence Plaintiff presents does not indicate that a final policymaker knew of the need for better supervision or failed to make any attempt to prevent the excessive use of force. Accordingly, the Court finds no municipal liability for excessive use of force as a matter of law.

## V.    Plaintiff's Motion to Unseal Is Granted in Part

The Court now turns to the matter of sealing. On June 20, 2024, the Court entered a Stipulation of Confidentiality and Protective Order wherein the parties agreed that confidential information that "is not material to the issues addressed in court submissions" where the "parties agree in writing that the redaction of personal, confidential and/or identifying information would be sufficient to protect the interests of parties or non-parties" may be filed under seal "in accordance with the rules of the District Court." ECF No. 161 ¶¶ 11–12. The Court's Individual Rule 5 requires parties to simultaneously file a letter-motion to seek leave to file documents under seal. On September 23, 2024, Plaintiff filed all documents in support of his Opposition under seal, seemingly at Defendants' request. However, no party filed a letter motion seeking the Court's approval to seal those documents at that time. ECF No. 207. On October 24, 2024, Plaintiff filed a letter motion disputing the scope of the redactions to Plaintiff's Opposition and

supporting documents. ECF No. 217. On December 23, 2024, Defendants filed a letter motion in

opposition. ECF No. 228. For the reasons stated below, the Court now grants this motion in part.

"The common law right of public access to judicial documents is firmly rooted in our

nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The

presumption of access is based on the need for federal courts . . . to have a measure of

accountability and for the public to have confidence in the administration of justice." *Id.* (quoting

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Requests to "seal documents must

be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary

circumstance or compelling need' to seal the documents from public inspection." *Bernsten v.

O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v.

Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a document

submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean

Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The documents filed under seal at ECF Nos. 206, 207, 208, and 216 are materials

submitted in connection with a motion for summary judgment and are therefore "unquestionably

judicial documents under the common law" and subject to a strong presumption of public access.

*Lugosch*, 435 F.3d at 123. It is the parties' burden to demonstrate to the Court that any such

documents should be sealed. *DiRussa*, 121 F.3d at 826. Defendants, in their letter motion at ECF

No. 228, make three arguments: First, that the DOC Directives and Operations Orders should be

sealed for security purposes under the law enforcement privilege. ECF No. 228 at 2–3. Second,

that officers' disciplinary records should also be sealed under the law enforcement privilege for

disclosure of law enforcement techniques and procedures. *Id.* at 3. And third, that certain

deposition transcripts should be redacted for referencing directives, operations orders, and

disciplinary history. *Id.* at 4. This Court has already determined in a previous Order that DOC

34

Directives and Operations Orders fall under the law enforcement privilege. *See* ECF No. 196 (granting redactions to similar documents upon finding "that the City's interest in maintaining the confidentiality of the DOC . . . procedures (and the attendant safety concerns) outweighs the presumption of public access" under *Lugosch*); *see also In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988) (articulating purposes underlying the law enforcement privilege). However, with respect to the disciplinary history, Defendants fail to present a sufficient reason for their redaction or cite to any case law that categorically sweeps disciplinary files under the law enforcement privilege. In fact, one of the two cases that Defendants relies upon has emphasized that "[i]t is the privacy of [law enforcement] officers involved in an investigation that must be protected, not the privacy of [law enforcement] officers generally. Thus, for example, personnel records of [law enforcement] officers not involved in a particular investigation would not necessarily be privileged unless either a threat to their safety or an interference with the investigation can be shown." *Morrissey v. City of New York*, 171 F.R.D. 85, 90 (S.D.N.Y. 1997). Defendants have failed to show that disclosure of the disciplinary records at issue would interfere with an ongoing investigation or pose a threat to the officers' safety.

Accordingly, all documents filed in connection with the instant motions for dismissal and summary judgment shall be unsealed, with the exception of ECF Nos. 207-5, 207-9, 207-11, 207-13, 207-15, and 207-16, which shall be redacted with respect to discussions of certain law enforcement procedures and techniques. Plaintiff shall file redacted versions of ECF Nos. 207-5, 207-9, 207-11, 207-13, 207-15, and 207-16 according to Defendants' proposed redactions at ECF No. 217, except that the highlighted section at ECF No. 207-11 at 13:13–14:11 shall not be redacted because it does not pertain to a privileged law enforcement procedure.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss claims against Lake and Chopra as untimely is DENIED. Defendants' motion for summary judgment with respect to claims against the Individual Defendants is DENIED. Defendants' motion for summary judgment with respect to Plaintiff's claims under *Monell* against the City is GRANTED.

Plaintiff's motion to unseal documents submitted in connection with summary judgment is GRANTED IN PART. Parties shall file public versions of the documents and exhibits at ECF Nos. 206, 207, 208, and 216, except that ECF Nos. 207-5, 207-9, 207-11, 207-13, 207-15, and 207-16 shall remain sealed. Plaintiff is directed to file on the docket redacted versions of ECF Nos. 207-5, 207-9, 207-11, 207-13, 207-15, and 207-16 according to Defendants' proposed redactions at ECF No. 217, except that the portion at ECF No. 207-11 at 13:13–14:11 shall not be redacted. Going forward, any party seeking to seal any filings shall follow Rule 5 of the Court's Individual Rules and Practices.

Plaintiff's motion to attend a prospective trial in civilian clothing and without being handcuffed or otherwise shackled is GRANTED.

The Clerk of Court is directed to terminate ECF Nos. 172, 198, 201, and 228.

Dated: January 16, 2025
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge