UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
RONALD COLSON,

                      Plaintiff,

   -against-

MAXSOLAINE MINGO, MUNISH CHOPRA, ENJOLI MURRIA, MARK DANIELS, WALTER ROSS, KEVIN ANDERSON, CEDRIC CARTER, ALASON HENRY, EDWIN LOPERA, DANIEL ORTIZ, and THE CITY OF NEW YORK,

                      Defendants.
------------------------------------------------------------------------ x

Case No.: 18-cv-2765(JGLC)

## **PLAINTIFF'S MOTIONS *IN LIMINE***

The parties have met and conferred regarding the below motions *in limine*, but defendants have not agreed or made any offers in response to date. As such, plaintiff Ronald Colson moves *in limine* as follows:

**I.**  **The Court Should Either Bar Any Reference to Mr. Colson's Convictions Other than the Tampering with Evidence Conviction or Allow Mr. Colson to Bring Up Any Improper Use of Force by Any of the Defendants.**

    **A. The Court Should Bar Any Reference to Mr. Colson's Convictions Other Than the Tampering with Evidence Conviction.**

Evidence concerning Mr. Colson's convictions is admissible, if at all, only as impeachment under Fed. R. Evid. 609. That rule permits impeachment in this way only for two categories of crimes. One category is crimes where "establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." FED. R. EVID. 609. The only such crime for which Mr. Colson has been convicted is tampering with evidence. Mr. Colson acknowledges that this conviction can be used by defendants to attack his character for truthfulness.

The other category is crimes that were punishable by death or imprisonment for more than one year. However, there are limitations to this category.

One of the limitations is that the probative value of the conviction must substantially outweigh its prejudicial effect and the proponent must give reasonable written notice of the intent to use it if the conviction or release occurred more than ten years ago. FED. R. EVID. 609(b). Mr. Colson was convicted of, and released from incarceration for, drug offenses more than ten years ago. They have little, if any, probative value. *Lewis v. Velez,* 149 F.R.D. 474, 481-82 (S.D.N.Y. 1993); *United States v. Smith,* 551 F.2d 348, 363 (D.C. Cir. 1976). Defendants have not given written notice that they intend to reference these drug offenses either. They should not be admitted pursuant to Fed. R. Evid. 609(b).

The other limitation on crimes that are punishable by death or imprisonment for more than one year – the rest of Mr. Colson's felony convictions – is that the convictions are subject to Fed. R. Evid. 403. Therefore, the question is whether the probative value of these convictions "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

The probative value of these conviction is for impeachment. "Impeachment evidence is evidence 'having the potential to alter the jury's assessment of the credibility of a significant [] witness.'" *United States v. Madori*, 419 F.3d 159, 170 (2d Cir. 2005) (referring to a prosecution witness). The probative value of these convictions is limited to their ability to make Mr. Colson seem less credible – his propensity to lie.

But, as courts in this jurisdiction have repeatedly held, the crimes for which Mr. Colson was convicted do not have anything to do with one's propensity to lie. For example, in *Eng v.*

2

*Scully,* an inmate convicted of murder brought section 1983 claims against correction officials for excessive use of force. 146 F.R.D. 74, 77, 78 (S.D.N.Y. 1993). The court held that the murder was not probative of the plaintiff's truthfulness and barred the conviction pursuant to rules 609(a)(1) and 403. *Id*. at 78.

Like *Eng*, "[t]he jury [here] will have knowledge that Plaintiff is not of unblemished character; Plaintiff is presently a prisoner and will be at the time of the trial should he choose to testify." *Id.* at 78. Whatever minimal probative value might be ascribed to the conviction is outweighed by its prejudicial effect. FED. R. EVID. 403, 609(a)(i)(A); *see e.g., Jolly v. Troisi,* 2000 WL 620304, at * 2 (S.D.N.Y. 2000); *Giles v. Rhodes,* 2000 WL 1510004, at *1 (S.D.N.Y. 2000).

The Court should bar any reference to Mr. Colson's convictions other than his conviction for tampering with evidence.

### B. If the Court Allows Reference to Mr. Colson's Convictions Other Than Tampering with Evidence, the Court Should Allow Mr. Colson to Reference the Individual Defendants' and Witnesses' Improper Use of Force.

If the Court allows defendants to reference any of Mr. Colson's convictions, the Court should similarly allow Mr. Colson the opportunity to attack the individual defendants' improper use of force.

A substantial percentage of the defendants and potential witnesses in this case have been reprimanded by the Department of Correction for improper use of force. Dkt. 207-18 at 253-255; Dkt. 207-19 at 253-255; Dkt. 207-20 at 1155; Dkt. 207-22 at 493; Dkt. 207-23 at 449. If the Court concludes that Mr. Colson's violent convictions are probative of his character to provide truthful testimony, the individual defendants' violent acts also are probative of their character to provide truthful testimony. Specific acts that are probative of a witness's character for truthfulness are

admissible under Rule 608(b).  If Mr. Colson's improper use of force is relevant to his credibility, and therefore are not barred by Rule 403, then so too are those of the individual defendants under Rules 403 and 608(b).

II. **Instances In Which the Individual Defendants and Witnesses Lied on Governmental Documents or Under Oath Are Admissible Under Rule 608(b) and 404(b).**

Mr. Colson expects to show that several of the individual defendants and potential witnesses lied on governmental documents, expressly or by omission, and even in testimony under oath.  Dkt. 207-18 at 253-255; Dkt. 207-19 at 304, 312; Dkt. 207-21 at 273-74; Dkt. 207-24 at 513; Dkt. 207-at 460.  That they lied in those instances is admissible under Rule 608(b).

That they had been reprimanded previously for doing so demonstrates that they had been informed that they were supposed to include all relevant details without omission or lies, demonstrates that their lies are also pertinent because it in this case were intentional and therefore go to truthfulness.  FED. R. EVID. 404(b).

III. **Defendants Should Not Be Permitted to Reference the Fact That the Other Inmates Did Not Testify.**

Defendants should not be permitted to reference the fact that other inmates on the bus did not testify because their absence was caused by defendants' decision to redact those inmates' personally identifiable information.

Defendants may want to note, in examinations, the opening statement, or the closing argument that Mr. Colson has not called any of the other inmates that were in the bus as a witness. Defendants did not provide sufficient information to contact the inmates and the information provided is old.  Defendants appear to have tried to redact every single piece of identifying information.  For example, defendants identified one of the inmates aboard the bus as "R. Wilson" and that his last known address was in Upstate Correctional Facility.  Dkt. 239-5 at 6.  Mr. Colson

does not know whether he still is there or his full name. Mr. Colson had the same problem identifying the location of the inmate he knows, Hector Rodriguez. *See id.* at 7.

Mr. Colson should not be punished because, and defendants should not profit from, defendants' failure to provide sufficient information to identify the inmates that were on the bus. They should not be allowed to reference the fact that the other inmates were not called as witnesses.

## IV. Ronald Colson Should Be Allowed to Question Witnesses Regarding Evidence of Monitoring.

Mr. Colson intends to examine certain witnesses involved in the incident at issue about their knowledge that a court-appointed monitor was monitoring, among other things, whether corrections officers on Rikers Island were engaging in excessive use of force, including the excessive or improper use of chemical agents (colloquially called "gassing"). He anticipates that defendants will object and therefore seeks an advance ruling on this proffer.

Evidence is normally admissible if it is relevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. The evidence that Mr. Colson seeks to introduce meets those tests.

The fact that is of consequence is whether defendants used excessive force in the form of gas in responding to the incident. Certain defendant corrections officers are expected to testify that they gassed the people on the bus because those inmates were cutting themselves with broken glass. Mr. Colson maintains that those corrections officers were simply "gas happy."

If the corrections officers in question knew that their actions and inactions would be subjected to scrutiny by a court-appointed monitor, they would be more inclined to lie about their excessive use of gas; that is, to cover it up after the fact with a concocted story. For that reason, the evidence is relevant.

The two potential bases for rejecting this evidence do not hold water.

First, there is the consent judgment in *Nunez v. City of New York*. It provided, among other things, for the appointment and duties of a court-appointed monitor. None of the three provisions of that judgment that goes to the admissibility of evidence bars the evidence in question. The consent judgment says in section XIX(3), the Monitor's "Compliance Reports shall not be admissible against Defendants in any proceeding other than a proceeding related to the enforcement of this Agreement." To the same effect, see section XX(21). But the evidence in question does not fall within that prohibition because Mr. Colson does not seek to introduce the reports.

The last provision prohibits the Monitor from testifying in other litigations on certain subjects without approval of the court that entered the consent judgment. Section XX(28). Even if the Second Circuit ultimately affirms Judge Swain's interpretation of this provision in the Consent Judgment, which Mr. Colson is appealing and for which the Second Circuit has granted expedited review, questions to the defendants in this case would not violate it since Mr. Colson is not seeking to elicit any testimony from "the Monitor or anyone on his staff."

The second basis for rejecting this evidence is Fed. R. Evid. 403. It only comes into play if probative value is "substantially outweighed" by various listed "danger[s]." None of those is at work here. To the contrary, the fact that there was outside oversight that resulted in an impetus to cover one's tracks is a simple one, capable of exposition quickly, and not "unfairly" prejudicing anyone. Of course, the witnesses in question might say that they had no knowledge of the consent judgment or of the supervision that it created, and they might try to push back on whether they saw inmates cutting themselves. But the fact that a witness might not make the admissions that a proponent of evidence anticipates is hardly a reason to deny the proponent the opportunity to try.

6

Dated: Astoria, NY
February 17, 2025

/s/ Glenn Greenberg
Glenn Greenberg
MOUND COTTON WOLLAN &
GREENGRASS LLP
One New York Plaza, 44th Floor
New York, NY 10004
212.804.4254
ggreenberg@moundcotton.com

Ira G. Greenberg
TROUTMAN PEPPER LOCKE LLP
200 Vesey Street, Suite 2001
New York, NY 10281
212.415.8600
ira.greenberg@troutman.com

*Attorneys for Plaintiff*